FILED

01/09/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0135

DA 16-0135

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 5

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RANDALL LEE LERMAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DC 14-3605
Honorable Katherine M. Bidegaray, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Appellate Defender, Moses Okeyo, Assistant Appellant Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

            Jed C. Fitch, Beaverhead County Attorney, Dillon, Montana

Submitted on Briefs:  October 25, 2017

Decided:  January 9, 2018

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1   The State charged Randall Lerman, a licensed massage therapist, with Sexual Intercourse Without Consent after he rubbed a female client's genitals during a massage treatment session. A Beaverhead County jury convicted Lerman. Lerman appeals his conviction, arguing that the State did not present sufficient evidence to prove the elements of penetration and force. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2   Lerman was a licensed massage therapist in Dillon, Montana. Over the course of two months, Kelsey Stoker attended four massage therapy appointments with Lerman to help alleviate lower back pain. During her appointments, Stoker left on her undergarments, which included a cap-sleeved spandex undershirt and spandex shorts that went almost to her knees.

¶3   The fourth appointment took place on the evening of November 11, 2014. Stoker and Lerman were the only two people in the office building at the time. Stoker testified that during the appointment Lerman did not cover her exposed body parts with a blanket as he did during the previous appointments. He also pulled her bottom undergarments down to her knees, something he had not done before. Stoker testified that Lerman pulled her top down, exposing her breasts, and massaged her breasts and nipples with both hands. Stoker reported that she said nothing at this point, but "shut down" and "was scared to death" that Lerman "could do much more if I tried to fight back."

¶4   Lerman next massaged Stoker's buttocks, the backs of her thighs, and her groin. Stoker testified that she told Lerman she was not comfortable when he was rubbing her

2

upper thigh. Lerman, however, continued with the massage and inserted his fingers into Stoker's vagina. Stoker testified that she "told him that was too much and it was time to stop." Stoker testified that after removing his fingers Lerman apologized and stated, "When I'm working on you and your body, it makes it so difficult to keep my mind in the right place and focused on massaging."

¶5 Lerman then began rubbing Stoker's lower back, but after a short amount of time he returned to her groin area and began to rub her clitoris. Stoker testified that she felt stuck because she "had told him to stop once and he hadn't stopped so [she] didn't know what could happen next." Lerman rubbed her clitoris for three to four minutes until Stoker orgasmed. Lerman then stated, "There we go. We got it. We got it," and patted Stoker on the buttocks. The massage continued without further event for twenty more minutes. Stoker testified that she felt threatened and feared that if she stood up to Lerman she "had no chance" because he was so much larger than her. Stoker testified that she was 115 to 120 pounds at the time of the incident.

¶6 Stoker left Lerman's office and called her stepfather and husband as she drove across town to the church where her husband was in class. Her stepfather told her that she needed to write down what had happened to her and call the police. Stoker wrote down her account on an envelope and called the police from the church parking lot, where she met her husband. The police took her statement at the church and then brought her to the station for an additional interview. Later that same night, the police brought Lerman into the police station for questioning. On December 9, 2014, the county attorney filed an

Information with the District Court charging Lerman with Sexual Intercourse Without Consent.

¶7 Stoker's husband and stepfather both testified at trial that Stoker was emotionally distraught and crying immediately after the massage. Her stepfather testified that when he saw her a couple of days later she was still devastated and could hardly talk to him. She could not sleep and was having nightmares. Her stepfather also testified that after the incident she could hardly leave the house and was afraid to go out and do things. He noted that she was "depressed in her demeanor" and began receiving individual and family counseling after the incident. She continued to participate in counseling at the time of trial.

¶8 After the State rested its case, Lerman filed a motion to dismiss for insufficient evidence. He argued that the State failed to provide the jury with sufficient evidence of force. During argument on the motion, Lerman also questioned whether Lerman's continued rubbing after Stoker's order to stop constituted sufficient evidence of penetration to prove the elements of the crime. The District Court denied the motion, ruling that the evidence of Stoker's objection, the fact that Lerman did not stop, the definition of bodily injury, and the fact that any penetration, however slight, is sufficient under the statute, presented a sufficient case to send to the jury. The jury found Lerman guilty of Sexual Intercourse Without Consent. He was sentenced to Montana State Prison for forty years, with thirty-five years suspended.

## STANDARD OF REVIEW

¶9 When reviewing whether there is sufficient evidence to support a conviction, we view the evidence in the light most favorable to the prosecution and determine whether any

4

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Stevens*, 2002 MT 181, ¶ 23, 311 Mont. 52, 53 P.3d 356.

**DISCUSSION**

¶10 Lerman argues on appeal that the State did not present sufficient evidence to the jury to support the elements of penetration and force. Lerman posits that testimony of clitoral rubbing does not prove that the vulva was penetrated. He also argues that the State did not present evidence that Lerman used force to compel Stoker to submit to sexual intercourse, relying on *State v. Haser*, 2001 MT 6, 304 Mont. 63, 20 P.3d 100, and *Stevens*, ¶¶ 51-52. Lerman argues that without evidence of either bodily injury or threats of bodily injury, the State did not produce sufficient evidence of force to support a conviction.

¶11 The State counters that it presented sufficient evidence of penetration because Lerman both digitally penetrated Stoker and rubbed her clitoris. It maintains that either act is sufficient to meet the definition of sexual intercourse under § 45-2-101(68), MCA.[1] The State also argues that it produced evidence of force: Stoker's objections to Lerman's touches and his continued touching after her objections, along with the pair's isolation and significant size difference.

¶12 Sexual Intercourse Without Consent under § 45-5-503, MCA, requires proof that a defendant: (1) knowingly; (2) has sexual intercourse; (3) without consent. The definition

---

[1] In 2017, the Legislature amended the laws related to sexual crimes. 2017 Mont. Laws ch. 279. Unless otherwise noted, references to the Montana Code Annotated in this opinion are to the Montana Code Annotated 2013, in force at the time the offense was committed.

of "sexual intercourse" relevant here requires "penetration of the vulva . . . by a body member of another person," "however slight." Section 45-2-101(68), MCA.

¶13 Contrary to Lerman's arguments, the State did not rely exclusively on Lerman's rubbing of Stoker's clitoris to prove penetration. The State relied on both the digital penetration and the clitoral rubbing to prove the element of penetration. Stoker testified that she objected to Lerman's touching before each act, and the State relied on both acts to prove penetration. Regardless, Lerman's arguments that clitoral rubbing does not constitute penetration under the law are without legal merit. In the words of Lerman's trial counsel, we must consider "common sense anatomy." The outer portions of the vulva necessarily are penetrated, "however slight[ly]," when the clitoris is touched. Section 45-2-101(68), MCA.

¶14 We turn to the evidence of force. "Without consent," as defined in relevant part by the statute applicable to this case, means "the victim is compelled to submit by force."[2] Section 45-5-501(1)(a)(i), MCA. The statute goes on to define "force" as:

> (a) the infliction, attempted infliction, or threatened infliction of bodily injury or the commission of a forcible felony by the offender; or
> (b) the threat of substantial retaliatory action that causes the victim to reasonably believe that the offender has the ability to execute the threat.

Section 45-5-501(2), MCA. "'Bodily injury' means physical pain, illness, or an impairment of physical condition and includes mental illness or impairment." Section 45-2-101(5), MCA. "Resistance by the victim is not required to show lack of consent.

---

[2] The 2017 amendments removed the requirement of force from the definition of "consent." 2017 Mont. Laws ch. 279, § 2. In addition, the Legislature created a new offense of Aggravated Sexual Intercourse Without Consent if force is used against the victim. 2017 Mont. Laws ch. 279, § 1.

6

Force, fear, or threat is sufficient alone to show lack of consent." Section 45-5-511(5), MCA.

¶15 In *Haser*, this Court reversed the defendant's conviction for Sexual Intercourse Without Consent when he repeatedly digitally penetrated his victims while repositioning them during photo shoots. *Haser*, ¶ 8. In that case, the State conceded that the defendant had not threatened his victims. *Haser*, ¶ 48. The Court acknowledged that the statutes do not require actual physical force, but reasoned that if the defendant did not threaten his victims, then the statute does require the defendant to have inflicted or attempted to inflict bodily injury or committed a forcible felony. *Haser*, ¶¶ 48, 51, 54. The Court held that the shock, embarrassment, surprise, anger, and "a trace of fear" experienced by the victims were not "a species of pain, illness, or impairment inflicted by [the defendant] in order to compel them to submit to his repeated acts of digital penetration." *Haser*, ¶ 49.

¶16 In *Stevens*, a massage therapist was convicted of multiple counts of Sexual Intercourse Without Consent and Sexual Assault against multiple women. All of the women testified that when they objected to the defendant's actions, the defendant immediately stopped assaulting them and did not assault them again. *Stevens*, ¶¶ 13, 17. This Court reversed two of the Sexual Intercourse Without Consent convictions. *Stevens*, ¶ 50. The State's principal theory was that the victims were "physically helpless" under § 45-5-501(1)(b)(ii), MCA (1999), because they were in a sleeplike state at the time of the attacks, which this Court rejected. *Stevens*, ¶ 50. The Court further rejected the argument that the force element was met because the women were too frozen, frightened, and physically helpless to resist. *Stevens*, ¶¶ 51-52. The State admitted that there was no direct

evidence of a threat of bodily injury or rape, but rather contended that the threat was implicit in Stevens' sexually assaultive behavior. *Stevens*, ¶ 51.

¶17 Lerman argues that these cases, particularly *Stevens*, are on all fours with the facts here. However similar the cases may appear, the differences between the facts are material and demand a different outcome. Importantly, the State did not concede that Lerman did not threaten Stoker. Further, unlike in *Stevens*, the Defendant did not stop after his victim protested. Nor did the State argue that Stoker was physically helpless. Viewed in a light most favorable to the prosecution, a rational trier of fact could conclude that the totality of the circumstances communicated a threat to Lerman's victim: the two were isolated in an empty office building after hours, Lerman was much larger than his victim, and Lerman persisted in his assault despite Stoker's repeated objections. Stoker testified that she told Lerman she was uncomfortable before he digitally penetrated her. After the penetration, she told him pointedly to stop. Instead, he returned to her groin area and started rubbing her clitoris. Montana law did not require Stoker to push Lerman away, strike out at him, or attempt to flee. *See* § 45-5-511(5), MCA. A rational jury could find that Lerman's actions communicated a threat of physical force to the victim. Viewing the evidence in the light most favorable to the State, we agree with the District Court that a rational trier of fact could find all elements of Sexual Intercourse Without Consent beyond a reasonable doubt.

## CONCLUSION

¶18     Sufficient evidence supported the jury's guilty verdict.  The judgment is affirmed.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE